IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| FRANKIE E. WILLIFORD,<br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>    Defendant. | Civil No. 3:15cv390 (DJN) |

## MEMORANDUM OPINION

On August 31, 2011, Frankie E. Williford ("Plaintiff") applied for Social Security Disability Benefits ("DIB") and for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability due to attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, depression, anxiety, insomnia, fibromyalgia, back pain, a bone spur in his neck and a steel rod in his left femur, with an alleged onset date of January 1, 2011. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in failing to properly assess the medical opinion evidence in the record. (Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 10) at 3-6.) This matter now comes before the Court by consent of the parties, pursuant to 28 U.S.C. § 636(c)(1),

on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[1] For the reasons that follow, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 9), GRANTS Defendant's Motion for Summary Judgment (ECF No. 13) and AFFIRMS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On August 31, 2011, Plaintiff filed applications for DIB and SSI with an alleged onset date of January 1, 2011. (R. at 192-208.) The SSA denied these claims initially on April 12, 2012, and again upon reconsideration on June 28, 2012. (R. at 86, 100, 114, 128.) At Plaintiff's written request, the ALJ held a hearing on February 10, 2014. (R. at 34-72, 143-44.) On March 18, 2014, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because Plaintiff could perform work available in significant numbers in the national economy. (R. at 27-28.) On May 6, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court. (R. at 1-3.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, during step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). During step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite his

physical and mental limitations. 20 C.F.R. § 416.945(a). During step four, the ALJ assesses whether the claimant can perform his past work given his RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, during step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On February 10, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert testified. (R. at 12.) On March 18, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 14-28.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 13-14). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2011. (R. at 14.) At step two, the ALJ found that Plaintiff had major depressive disorder, ADHD, generalized anxiety disorder, degenerative disc disease of the cervical spine, fibromyalgia and osteoarthritis in multiple sites. (R. at 14). At step three, the ALJ found that Plaintiff did not have an impartment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff had the RFC to perform light, unskilled work, provided that an external source over which Plaintiff has no control does not dictate the pace of productivity. (R. at 17.) Plaintiff could occasionally climb ladders, ropes and scaffolds. (R. at 17.) He could occasionally kneel, crouch and crawl. (R. at 17.) Plaintiff also could have no contact or exposure to the general public and only occasional contact with co-workers and supervisors. (R. at 17.)

4

At step four, the ALJ found that Plaintiff could not perform any past relevant work. (R. at 26.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 27.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 28.)

## IV. ANALYSIS

Plaintiff, forty-three years old at the time of this Memorandum Opinion, previously worked as a weaver and a maintenance mechanic. (R. at 17-18, 67-68.) He applied for Social Security Benefits, alleging disability from both mental and physical disorders, including ADHD, bipolar disorder, depression, anxiety, insomnia, fibromyalgia and back pain, with an alleged onset date of January 1, 2011. (R. at 192, 236.) Plaintiff argues that the ALJ erred by failing to properly assess the medical opinion evidence in the record. (Pl.'s Mem. at 3-6.) Specifically, Plaintiff contends that the ALJ should have afforded greater weight to the medical opinions of Plaintiff's treating physician, Dr. Earl Moore; Plaintiff's surgeon, Dr. Brian Cameron; and a consulting psychologist, Dr. Christopher Cousins. (Pl.'s Mem. at 4-6.) Plaintiff also argues that the ALJ improperly gave great weight to the opinions of the state agency psychologists. (Pl.'s Mem. at 4-5.) Defendant responds that substantial evidence supports the ALJ's decision, because the medical opinion evidence of Plaintiff's physicians was inconsistent with other evidence in the record. (Def.'s Mot. for Summ. J. and Br. in Supp. ("Def.'s Mot.") (ECF No. 13) at 15-17.) For the reasons set forth below, the Court finds that the ALJ did not err in his decision.

The SSA's regulations define a "treating source" as "[the claimant's] own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing

5

treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. The ALJ must give controlling weight to a treating source's opinion if: (1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) it is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. However, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig*, 76 F.3d at 590 (finding that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight").

When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005); 20 C.F.R. §§ 404.1527(c), 416.927(c). Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dreged up specious inconsistences or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (citations omitted).

In this case, after considering all of Plaintiff's medical records and impairments, the ALJ found that the medical opinions of Plaintiff's physicians — Dr. Cousins, Dr. Cameron and Dr. Moore — could not be given controlling, or even great, weight. (R. at 25-26.) Specifically, the ALJ concluded that each of these opinions was inconsistent with the totality of evidence in the record and overstated Plaintiff's limitations based on Plaintiff's self-report. (R. at 25-26.)

6

Conversely, the ALJ afforded the state agency psychologists' opinions great weight, because they were consistent with the record. (R. at 25.) The Court finds that substantial evidence supports the ALJ's determination.

A. The ALJ did not err in discounting the medical opinion of Dr. Earle Moore.

Plaintiff first argues that the ALJ should have given greater weight to the opinion of Dr. Earle Moore, M.D. (Pl.'s Mem. at 5.) Dr. Moore treated Plaintiff between May 2008 and January 2012 for depression, anxiety, insomnia, hypertension, prescription drug addition, crack cocaine use, diarrhea and low back pain. (R. at 344-68.) On March 14, 2012, Dr. Moore completed a Mental Status Evaluation Form opining that Plaintiff is depressed and "cannot handle stress of daily work life." (R. at 395.) The ALJ gave less than controlling weight, because Dr. Moore's opinion "is not consistent with the longitudinal evidence of record." (R. at 26.)

Substantial evidence supports the ALJ's decision, beginning with Plaintiff's medical records. On February 23, 2011, Plaintiff visited a staff psychiatrist at Southside Community Services Board for medication management. (R. at 339.) Plaintiff was calm, relaxed and cooperative, with normal mood and speech. (R. at 339.) On March 23, 2011, Plaintiff returned to Southside Community Services Board and reported that he had no complaints. (R. at 339.) Plaintiff again appeared calm, relaxed and pleasant, with normal speech. (R. at 339.) On June 15, 2011, Plaintiff reported that he had no complaints. (R. at 340.) Plaintiff appeared less anxious and reported sleeping well. (R. at 340.)

On July 11, 2013, Plaintiff saw Dr. Kimberly Reese at the VCU Psychiatry Clinic for anxiety and panic attacks. (R. at 564.) Plaintiff denied any recent history of manic symptoms or any need for hospitalization for such symptoms. (R. at 564.) On August 1, 2013, Plaintiff

7

returned to Dr. Reese. (R. at 543.) Dr. Reese noted that Plaintiff had a linear, logical and goal-directed thought process without any abnormal thought content. (R. at 543.) Although Plaintiff was anxious, he was alert with good eye contact and intact judgment. (R. at 543.) On August 29, 2013, Plaintiff reported to Dr. Reese that "he is improving and feels better, though does have some periods of anxiety." (R. at 525.) On September 12, 2013, Dr. Reese noted that Plaintiff had improved since his last appointment. (R. at 539.) Plaintiff was alert and oriented, with fair insight and judgment. (R. at 539.)

Plaintiff's own statements further support the ALJ's decision that Dr. Moore's opinion is inconsistent with the totality of evidence. Plaintiff reported that he worked even after the alleged onset date. (R. at 338-40, 347.) On January 5, 2011, Plaintiff visited Dr. Randall H. Suslick for flu symptoms. (R. at 347.) Dr. Suslick advised Plaintiff to take "the rest of the week off from work," (R. at 347), which means that Plaintiff was working at the time. On March 23, 2011, Plaintiff reported to a staff psychiatrist at the Southside Community Services Board that he was working for his uncle and looking for another job. (R. at 339.) On June 25, 2011, Plaintiff again reported that he was "working hard" for his uncle. (R. at 340.) Further, on March 22, 2012, during a mental status evaluation, Plaintiff stated to Dr. Christopher Cousins that he had put in "applications for various jobs."

In short, there is at least a "scintilla of evidence" on which the ALJ could reasonably base his decision that Dr. Moore's opinion is inconsistent with the record. Further, this Court cannot "reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ." *Johnson*, 434 F.3d at 653 (quoting *Craig*, 76 F.3d at 589). Therefore, although Dr. Moore is a "treating source," the ALJ was permitted to afford this opinion limited weight, because it contradicted other medical evidence in the record and substantial evidence supports

the weight afforded by the ALJ to Dr. Moore's opinion. *See Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) ("Both Social Security regulations and our case law establish that a treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence.")(citations omitted).

B. The ALJ did not err in discounting the opinion of Dr. Brian Cameron.

Plaintiff similarly contends that the ALJ should have afforded Dr. Brian Cameron's opinion greater weight, because he was Plaintiff's treating surgeon. (Pl.'s Mem. at 4.) On September 17, 2012, Dr. Cameron performed a cervical discectomy and fusion operation to relieve Plaintiff's neck and arm pain. (R. at 21, 430.) Following discharge, Dr. Cameron recorded that Plaintiff ambulated without difficulty and that the surgery appeared to be successful. (R. at 430.) On January 29, 2013, however, during a post-operation examination, Dr. Cameron opined that Plaintiff was "currently unable to work in his current state." (R. at 459.) Dr. Cameron also noted that the "greatest likelihood of this chang[e] revolves around continued psychiatric care and evaluation." (R. at 459.) As such, Dr. Cameron referred Plaintiff for a psychiatric evaluation and care at the VCU Psychiatry Clinic. (R. at 459.) Based upon substantial evidence in the record, the ALJ concluded that Dr. Cameron's opinion concerning Plaintiff's work limitation is inconsistent "with the totality of the evidence in file" and could not be given "controlling, or even great, weight." (R. at 25-26.)

First, [i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). On October 30, 2012, Plaintiff reported mild pain, which was expected, and no other physical difficulties. (R. at 22.) However, both Plaintiff and his mother reported that Plaintiff's anxiety had been "out of

control." (R. at 467.) Dr. Cameron referred Plaintiff directly to the VCU Emergency department. (R. at 22, 467.) During the examination, Plaintiff initially reported that he had been taking medication (R. at 444), but later reported he had been out of medicine for several days and had not sought refills. (R. at 442.) The physician on duty provided medication, and Plaintiff reported being much less anxious and comfortable leaving the hospital. (R. at 442.)

Further, Plaintiff's mental health symptoms improved upon engaging in regular group therapy and mental health treatment. (R. at 23-24.) Specifically, the ALJ noted that Plaintiff reported that he was "improving and felt better" after regular therapy. (R. at 24.) The ALJ also noted that Plaintiff's mental health treatment had been generally routine and conservative. Other than the single visit to an emergency room in October 2012 for reported panic attacks, Plaintiff did not require frequent hospitalization or emergency treatment for his symptoms. (R. at 24.) An ALJ may appropriately consider discrepancies between a physician's opinion and the provision of conservative treatment in evaluating a medical opinion. *See Dunn v. Colvin*, 607 F. App'x 264, 273 (4th Cir. 2015) (holding that an ALJ's consideration of the conservative nature of treatment was a proper factor to be considered); *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (finding that ALJ reasonably discounted doctor's proposed limitations because, *inter alia*, the claimant was receiving conservative treatment) (per curiam). Therefore, substantial evidence supports the ALJ's assessment of Dr. Cameron's opinion.

C. The ALJ did not err by discounting the opinion of Dr. Christopher Cousins.

Plaintiff also contends that the ALJ improperly discounted the medical opinion of a consulting psychiatrist, Dr. Christopher Cousins, Ph.D. (Pl.'s Mem. at 3-5.) Although Plaintiff acknowledges that Dr. Cousins is not a "treating source," he argues that, because Dr. Cousins's opinion "was based on observation and study," it should have been given greater weight. (Pl.'s

Mem. at 4.) This argument is unpersuasive. The ALJ properly assigned little weight to Dr. Cousins' opinion, because the ALJ determined that Dr. Cousins' opinion is "an overestimate of limitation, based solely on the claimant self-report" and is "inconsistent with the longitudinal evidence of record." (R. at 25.)

On March 22, 2012, Dr. Cousins conducted a mental status evaluation of Plaintiff at the request of the Virginia Disability Determination Services. (R at 406.) The examination consisted of general observations, a review of Plaintiff's physical health history and treatment and an interview. (R. at 406-11.) Dr. Cousins noted that Plaintiff was cooperative throughout the evaluation, but exhibited signs of depression and anxiety. (R. at 407.) Dr. Cousins also noted that Plaintiff had "significant psychomotor agitation" and Plaintiff's leg "shook almost constantly." (R. at 407.) Based on his examination, Dr. Cousins assessed Plaintiff with major depressive disorder, ADHD, anxiety disorder and a history of Vicodin dependence. (R. at 412-13.) Dr. Cousins also included a prognosis for "rule out"[2] bipolar disorder. (R. at 412.)

First, Dr. Cousins' opinion is internally inconsistent. Dr. Cousins opined that, due to anxiety, Plaintiff may not be able to perform detailed or complex tasks and "would not be able to maintain regular attendance in the workplace, perform work activities on a consistent basis or complete a normal workday or workweek without interruptions." (R. at 413-14.) However, in the same report, Dr. Cousins stated that, based on the mental status evaluation, Plaintiff "appears capable of performing detailed and complex tasks." (R. at 413.) Similarly, Dr. Cousins reported

---

[2] "Rule out" is an informal diagnostic label that clinicians use for a provisional diagnosis when an individual "meets many of the symptoms but not enough to make a diagnosis at [the] time." EDWARD S. NEUKRUG & R. CHARLES FAWCETT, ESSENTIALS OF TESTING AND ASSESSMENT: A PRACTICAL GUIDE FOR COUNSELORS, SOCIAL WORKERS, AND PSYCHOLOGISTS 48 (2014).

that Plaintiff would not "require special instructions or additional supervision" and "appears capable of accepting instructions from supervisors." (R. at 414.) Thus, Plaintiff's argument that Dr. Cousins' opinion demonstrates Plaintiff's inability to work lacks merit.

Second, Dr. Cousins' opinion is not consistent with the record as a whole. Generally, the more consistent a medical opinion is with the record, the more weight it should be assigned. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). As the ALJ discussed and has been discussed above, the record shows that Plaintiff performed work and looked for work after the alleged onset date of his disability. (R. at 338-40.) Additionally, Plaintiff's mental health treatment was generally routine and conservative, with no evidence of repeated emergency room visits or hospitalization. (R. at 24.) An ALJ may properly consider the conservative nature of treatment in weighing medical opinion evidence. *See Dunn*, 607 F. App'x at 273 (finding that it is appropriate for the ALJ to consider the conservative nature of a claimant's treatment in determining whether the claimant is disabled because "if all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is"). In sum, substantial evidence in the record supports the ALJ's conclusion that Dr. Cousins' opinion is inconsistent with the longitudinal record.

Finally, the ALJ found that Dr. Cousins' opinion appeared solely based on Plaintiff's self-report. (R. at 25.) The ALJ may assign lesser weight to the opinion of a physician that is based largely upon a claimant's self-reported symptoms. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Johnson*, 434 F.3d at 657-58 (finding that the ALJ properly rejected a physician's opinion that was based on the claimant's own subjective complaint). In this case, Dr. Cousins conducted a single consultative examination on March 22, 2012. (R. at 20, 406.) The examination included an interview of Plaintiff and general observations made by Dr. Cousins

before that interview. (R. at 406-412.) Throughout his report, Dr. Cousins noted that Plaintiff "reported" or "endorsed" his symptoms, but no evidence existed of clinical or objective tests being performed. (R. at 408-12.) Dr. Cousins even noted in his evaluation that there was not enough evidence at the time of the evaluation to make a diagnosis of bipolar disorder, and that Plaintiff denied typical symptoms associated with manic episodes. (R. at 413.) Because Dr. Cousins' opinion was inconsistent with the evidence of record and was based solely on subjective complaints rather than medical signs or laboratory findings, the ALJ properly gave lesser weight to this opinion. 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).

> D. The ALJ did not err in affording great weight to the opinions of state agency psychologists.

Plaintiff next argues that the ALJ erred in giving great weight to the opinions of state agency psychologists. (Pl.'s Mem. at 4-5.) Plaintiff claims that the ALJ was not justified in accepting the opinion of the state agency psychologists over the opinions of "three doctors who actually reacted with, examined, treated or interviewed [Plaintiff]." (Pl.'s Mem. at 5.)

In April 2012, Dr. Stephen Saxby, Ph.D., a state agency psychologist, reviewed the evidence in connection with Plaintiff's initial application for SSI and DIB. (R. at 76-99.) Dr. Saxby found that Plaintiff "would be capable of sustaining simple, routine work," but would have some difficulty interacting with others, and managing stress in a competitive work environment. (R. at 82-83, 96-97.) Moreover, Dr. Saxby opined that Plaintiff had no more than moderate limitations in mental functioning and adaptation limitation. (R. at 82-83, 96-97.) Similarly, in June 2012, Dr. David Niemeier, Ph.D, another state agency psychologist, reviewed the evidence in connection with Plaintiff's request for reconsideration. (R. at 101-126.) Dr. Neimeier also concluded that Plaintiff "would be capable of sustaining simple, routine work." (R. at 109, 123.)

13

State agency medical or psychological consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). Such opinions merit "significant consideration" and the ALJ may rely upon them. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). In this case, the ALJ gave the state agency psychologists' opinions great weight, because the opinions were consistent with the record of evidence. (R. at 25.) Substantial evidence supports the ALJ's decision.

First, written statements and testimony in the record are consistent with the assessment reflected in the state agency psychologists' opinions. The state agency psychologists concluded that Plaintiff could perform "light work with no more than occasional climbing of ramps and stairs as well as ladders, ropes, or scaffolds, no more than occasional stooping, kneeling, crouching, and crawling." (R. at 25.) In a self-written Function Report that was submitted to Disability Determination Services, Plaintiff reported that he prepared his own meals, handled his own finances, performed household chores, could drive a car and did his own shopping. (R. at 261-62.) Plaintiff's mother confirmed that Plaintiff did his own laundry, cleaned his room, did other chores around the house and fixed his own dinners. (R. at 245, 247.)

Plaintiff also stated that he could walk for up to thirty minutes before needing a rest, could lift up to ten pounds, and could bend, squat, stoop and kneel, albeit for only short periods of time. (R. at 51, 257, 262.) Further, Plaintiff reported to his treating physician that he was working for his uncle after the alleged onset date of disability. (R. at 338-40.) On March 22, 2012, Plaintiff also reported to Dr. Cousins that he had put in applications for various jobs, although he had not received any responses. (R. at 409.)

Because the record supports the assessment of work ability and limitations reflected in the state agency psychologists' opinions, substantial evidence supports the ALJ's decision to give the opinions great weight.

## V. CONCLUSION

For the reasons set forth above, the Court hereby ORDERS that Plaintiff's Motion for Summary Judgment (ECF No. 9) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

An appropriate Order consistent with this Memorandum Opinion shall be issued.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: June 24, 2016